Good morning. May it please the Court, Counsel Mr. Norey. My name is Michael Fondungala. I am the attorney for the appellant Leah Findlator. We are here today to ask this Court to reverse the decision of the District Court in finding, following a summary judgment motion, that Ms. Findlator cannot sustain her case of discrimination against Allina. We believe that the judge got it wrong in analyzing this case on the basis that Ms. Findlator and Ms. Baruch both were charged under Allina's violence-free work policy. They were not. So the entire analysis of the Court on the basis that these two were charged with violation of that policy was in error. The facts will show that these two people violated the policy. Allina admits that the policy was violated by both of them. But Allina chose not to charge Ms. Baruch with the violation of that policy. We believe that that is where the discriminatory act happened. It happened because they themselves stated in testimony that they did consider the race of these two employees in arriving at their decision to charge them with violations of policy. Just to make clear, you said they did consider race and that was admitted? They did admit that they considered race and the Court ruled that they considered race in order to determine whether race was an issue. You know, I followed that argument, but my question really is, is it really fair to say that at any point, if the decision makers sit down, they make a decision, and then at the end of that decision, somebody asks the questions, are we sure that we are not looking at this through a lens of implicit bias and that race came into this in any inadvertent way? And if you ask that question, which is I think essentially what they did admit to doing, does that automatically mean that we have to say that they improperly considered race? And doesn't that really have a chilling impact for anybody to just raise the question that, hey, hold on, wait a minute, there may be a race issue here? You're correct, Your Honor, but Alaina never gave us a reason as to why they did not charge her. They admit that they did not charge her, but they gave us no reason. From a plaintiff's perspective, with them giving us no reason, the only thing that stands, because these two employees were equal on all standing, the only difference was that they were charged differently. And from a plaintiff's standpoint, you have to assume race. And this is an issue for the jury, not for the judge, because they did not give the judge an answer. And so the was an impact of race in their analysis of whether to charge or not to charge. And because they did not charge Baruch with violating that policy, the court was wrong in analyzing it and trying to make a difference between the two. I don't know how the court got to that when even Alaina did not give them a reason. And then the court concluded that it was an omission on the part of Alaina. An omission is not good enough. Alaina should have given a reason why they did not charge Ms. Baruch with violating that policy. And we believe that just on the basis of that, this case should be reversed, because that consideration is a consideration for the jury. Now, their violence policy is very clear. It applies to all employees. It covers violence and threats of violence, which is what these two committed. Ms. Baruch committed a threat of violence. Ms. Finlaytor, violence. It applies to all employees. It's a zero-tolerance policy. We believe that if they are charged, both of them, with violating this policy, both of them will now face the same penalty. There's no wiggle room in this policy that has to determine the severity. No. You committed the crime. It's covered under the policy. You're out of there. It's covered under the policy, but the policy doesn't dictate that the person has to be terminated. It doesn't dictate the punishment. Correct. So whatever punishment would have been decided would have been for both of them, whether it's termination or suspension. Isn't it possible that a threat of violence and actual violence might be punished differently under the policy? The policy does not allow that. Well, I thought you just indicated that it doesn't mandate a specific punishment. It doesn't mandate a specific punishment, but it says it applies to all employees and no individual who violates this policy, or it says any individual who violates this policy may be disciplined. So in arriving at that discipline, since both of them violated the policy, it should be equal punishment. Now, they did not even charge her, and we believe that the reason for not charging was because they were being discriminated in order not to terminate. Are you arguing essentially that it is never proper when this policy is violated to treat two people differently because the manner in which the violation took place is different? The manner may be considered, but the policy is very clear. If the actions violate or implicate what is prohibited in the policy, I think that's where the analysis ends. And if whatever decision has to be made has to apply to both. They violated the policy. There were two things under this policy, violence and threats of violence. And both of them committed, one committed violence, the other one committed the threat of violence. So in coming down on the punishment, you have to be fair and equal to both. Now, there may be other considerations that are taken. For instance, prior history of discipline, which if you look in this case, Ms. Feinlotter had a clean slate. Ms. Baruch had other issues that had come up before. So that's typically how employers analyze this thing, on prior history of discipline. They don't look at it as to whether one had severity or not. If you look at the evidence here, the complaint was that this disrupted the workplace, what the two of them were doing. And so our belief is that they should have treated them the same. Counsel, in order for the disparate application of the workplace policy to be evidence of pretext, wouldn't we have to determine that throwing the lab coat was of comparable seriousness to physically touching and pushing someone? Now, the lab coat, we've got to look at what happened. The lab coat was thrown twice. And under the policy, that is a threat, which puts another employee in fear of harm. Okay? So the policy covers both. Right, but that's not my question. My question is, in order for it to be evidence of pretext under our Bowen v. G4S youth decision, I think we would have to find that those were of comparable seriousness. Because you've treated the two employees differently. I think there's no question about that. But are those two actions of comparable seriousness? Yes, they are. Because if you look at the evidence here, what was this push? It was not a slap, like in other cases that we have under this circuit. It was a push. And Ms. Feinleiter's argument was that she was trying to push her away from her face. It was not a push to cause injury. So if you analyze it, the severity is not going to be any different. Because the lab coat, if you look at it well, it has biohazard on it. It has people's blood on it. And this lab coat was not thrown once. It was thrown twice. Does it matter that she missed both times? That is an issue that to me should go to the jury, because there's evidence that it did hit her. There's contradicted evidence. One of the witnesses testified that it did not hit her. Another witness said it did hit her. So we don't know which one is. But did Alina know that at the time they made the decision to terminate your client? Because my understanding is some of the details in the additional testimony came out after the termination in the union grievance process. Am I remembering that properly? I mean, the decision was made, I think, my understanding is Alina thought it did not hit her. The lab coat did not hit her at the time, because the record wasn't developed. Right. That record was developed during arbitration and grievance and the other processes that were done internally. But at that time, Alina had a choice. They could have said, okay, we made a mistake, because the arbitrator ordered that she should be reinstated and found that this policy was not evenly applied. But Alina did not offer an apology, and that's why Ms. Finley said she could not go back there from someplace that has treated her the way they have done. The fact that they didn't apologize after the fact doesn't really go to whether or not the initial decision to terminate was based on race. We believe that it was based on race in the initial decision to charge, because that's where it started. Because by not charging Ms. Baroque, there's no way you're going to analyze whether they were all in the same policy. And charging her with a different policy that was violated is what gave them wiggle room to suspend her rather than terminate her. We believe that if both of them were charged with violating the violence work policy, there would have been no wiggle room, because that policy is tight. It's a zero-tolerance policy. Yeah, but does zero-tolerance mean that the only remedy is termination? I mean, you can impose all kinds of discipline that doesn't involve termination, right? Correct. All right. And if you elect to view it through a prism of seriousness, right, and you say that, well, throwing the lab coats, which we believe did not hit Ms. Feinlater, that that is less serious than the push, which we believe because the physical contact is a more serious offense. Now even if that turns out to be a mistaken belief, it's not a pretext for race, right? And so I'm just having a hard time with the idea that under your analysis you really are arguing that there's just no weighing that goes into the seriousness of the conduct ever. Based on their policy. But, well, their policy says zero-tolerance. Zero-tolerance I don't think equates necessarily with termination. I mean, if a guy walks in, if there are two employees, they're standing in a room, and one of them says, you know, I hate you, I'm going to kick your butt. And then the other employee pulls out a gun. It seems to me that you shouldn't necessarily have to treat those two people equally under the policy, right? Because you could look at seriousness, right? And you're saying you can't. That's for purposive argument, but for this case she was not charged. So that analysis under the poll would have been talking about a different situation if both of them were charged. And so that's based, that's your argument essentially that the district court got it That's not the charge. You're saying that the court had no right to substitute its own notions for what the charges should have been for what they actually were. Correct. All right. Thank you. Any other questions? Thank you. Thank you. I'll reserve the rest of my time. Mr. Norrie. Counsel may please the court. Appellant Feinlader was terminated because she pushed her co-worker during an argument. It's that simple. On Appellee Alina Health's motion for summary judgment, the district court correctly determined that Feinlader could not establish that the reason for her termination was pretext for race discrimination. More specifically, the district court correctly concluded that Feinlader could not show that Alina failed to follow its own policy or that a similarly situated employee was treated differently. For this reason, we respectfully request that the court affirm the decision of the district court. I want to focus the court this morning on two main issues, the similarly situated issue and the policy issue. Appellant Feinlader cannot show pretext because she was not similarly situated to her co-worker, Leah Baruch. The core of Feinlader's claim is that Alina must be guilty of race discrimination because it treated her differently than Miss Baruch. But as this court was just observing, Miss Feinlader and Miss Baruch did not behave in the same manner. And this court has consistently noted that at the pretext stage, a plaintiff must show that they are similarly situated in all relevant respects and that both employees engaged in the same conduct without any distinguishing circumstances. And this court also has repeatedly noted that this burden is rigorous. Under Eighth Circuit precedent, Alina reasonably distinguished between an employee who threw a lab coat and an employee who physically shoved someone else. Several of this court's cases make clear that Alina was permitted to exercise its business discretion and its business judgment in this way. The Edwards versus Highland Dairy case in 2017, which was cited by the district court. In that case, the court, the employer was permitted to distinguish between an employee who left work and then called in to have someone clock out for him and another employee who just forgot to clock out. In the Ward versus P&G case from 1997, this court said that an employer was permitted to distinguish between one employee who grabbed someone's finger and another employee who slapped someone in the arm. In the Wheeler case from 2014, which I discussed at length with the district court as is reflected in the transcript, an employee, excuse me, an rude gesture and an employee who actually touched someone. And finally, in the Ricks case, the employer was permitted to distinguish between two employees, both of whom were guilty of violating the no felony rule because one employee had a drug possession felony and the other employee had a false imprisonment felony charge. Counsel, don't you think the distinguishing factor here, though, that makes this case more difficult is that Elina had a very strict workplace policy that had a zero tolerance for violence and threats of violence. And it seems that both employees violated that policy and yet only the black employee was terminated. Correct, Your Honor. Both employees did violate the text of that policy, but as this court's suss out, a zero tolerance policy does not mean that the penalty is exactly the same. But the company didn't even apply the policy. Correct. The company did not, but we know in the record that the company, when asked questions about whether Ms. Feinlater's, excuse me, Ms. Baruch's conduct would have violated that policy, the company acknowledged, yes, it did, but we didn't believe that the behavior was the same. And most importantly, the policy doesn't require us to treat it the same. We know from the decision maker's testimony in the record, and that's at the appendix at pages 40 and 45, we know that it just says you will be subject to corrective action. It doesn't say what the level of corrective action must be. And that's the second point in my argument this morning on the state, on the issue of the policy, right? Feinlater's entire argument hinges on a misapprehension that the policy requires the imposition of the same penalty no matter how the policy is violated. But that is not what the record shows. Number one, the policy itself doesn't say that. And the undisputed testimony from Ms. Baruch's is that the workplace violence policy allows ELINA the flexibility to determine the appropriate level of corrective action. It does not require a one-size-fits-all punishment. And if we look at page 56 of the appendix, that's where we will note the policy itself. The other thing I would note is that the policy itself does not say that it must be applied in all instances in which it is violated. So there is no facial requirement that ELINA had to apply that policy in this circumstance. And contrary to Mr. Fandugala's argument, the district court did not conclude that ELINA charged both. The district court correctly noted that Ms. Baruch was not charged with violating the workplace violence policy, but the district court also correctly noted that it didn't matter because ELINA retains the discretion to treat two different violations differently. And that's exactly what it did here. But more importantly than that, even if ELINA's discretionary decision not to reference the workplace violence policy was somehow a violation of the policy, that is not enough by itself to show pretext and rescue Ms. Feindlater's claim from summary judgment. This court in McCullough versus the University of Arkansas, and again in the Schaffhauser versus UPS case, which is from 2015, notes that a violation of policy is not always enough to show pretext. It notes that an employer can choose how to run its business, including whether or not to follow a policy. And it notes that there have to be some facts that show that a termination is more likely motivated by race. And Ms. Feindlater simply has no such facts in this case. Ms. Feindlater rests solely on the distinction between the judgment that ELINA made for an employee who pushed someone, an employee who threw a lab coat. And Judge Erickson, you correctly focused on the fact that ELINA in its investigation wanted to make sure it was making the right decision for the right reasons and considered race in the investigation, but not in the disciplinary decision. It considered race to ensure the non-existence of racial discrimination. That is not a violation of the law, and that is not race discrimination. Feindlater was terminated because she pushed a coworker. She can't show that this explanation is pretext for race discrimination, and the court should not consider that. With that being done, you're free to sit down. Thank you. Thank you, Your Honor. ELINA's violence-free workplace policy is very clear, and that is a policy that makes them committed to a work environment that is free from threatening or intimidating conduct. ELINA has zero tolerance for violence or threats of violence in any form in the workplace at work-related functions or outside of work. And it states that no individual may engage in any verbal or physical conduct which causes or threatens to cause harm to persons or property. This policy is a tight policy, and it doesn't give them a wiggle room to do what they did in this case. And counsel stated that this case lawyer incited to the Edwards case. The Edwards case is different from our case. In the Edwards case, Mr. Tubbs and Mr. Rezak were two different, held two different positions. They were not similarly situated. And one was sleeping on the job, and the other one was involved in dishonesty. So the acts that they committed were different. In our case, Ms. Feinleiter and Ms. Baruch are similar in every respect. They violated a violence-free policy. They were all lab technicians. They were all under the same supervisor. And the only thing that's different in this case is the way ELINA approached their case. We believe there were some discriminatory animals in that decision. Thank you. Thank you. Thank you very much, gentlemen, for your time here today and your briefing. We appreciate your efforts. The court will take the matter under advisement. The clerk may call the next case. Wendy Thompson v. Canabac County, et al. Thank you.